*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1880**

State of Minnesota,
Respondent,

vs.

Morrell Grant,
Appellant.

**Filed October 31, 2016
Affirmed
Stauber, Judge**

Ramsey County District Court
File No. 62-CR-14-5504

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Bradford Colbert, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Hooten, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**STAUBER**, Judge

On appeal from his conviction of one count of identity theft, appellant argues that (1) his guilty plea must be vacated and his conviction reversed because the factual basis was insufficient and (2) the district court erred and violated his due-process rights by

ordering him to pay restitution when there was no evidence that the victims suffered any loss, most of the victims did not request restitution, and some of the victims specifically stated that they did not want restitution. We affirm.

**FACTS**

In July 2014, appellant Morrell Grant was charged with one count of identity theft. The complaint alleged that on July 21, 2014, the manager of a Holiday gas station contacted police and informed them that she discovered that a large amount of suspected "fraud" had occurred earlier that day. The manager told police that earlier in the day, appellant and P.G. entered the store and purchased gift cards and other items valued at $2,200 using other gift cards, and that appellant and P.G. were in the store again.

Police made contact with appellant and P.G. as they left the store. On appellant's person, police discovered two wallets containing several American Express gift cards. Police also discovered additional gift cards and hundreds of dollars in new merchandise in appellant's and P.G.'s vehicle. Further investigation revealed that the American Express gift cards possessed by appellant and P.G. were associated with American Express credit card numbers for 22 known victims from around the country.

In June 2015, appellant entered an *Alford* plea to the charged offense. The district court then sentenced appellant to a bottom-of-the-box sentence of 41 months in prison. Appellant was also ordered to pay $1,000 in restitution to each of the 22 identified victims, and $3,121.07 to American Express. This appeal followed.

2

**I.**

"A defendant has no absolute right to withdraw a guilty plea after entering it." *State v. Raleigh*, 778 N.W.2d 90, 93 (Minn. 2010). Minnesota Rule of Criminal Procedure 15.05 provides two grounds for plea withdrawal; first "the court must allow a defendant to withdraw a guilty plea upon . . . proof to the satisfaction of the court that withdrawal is necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. Second, the court may, in its discretion, "allow the defendant to withdraw a plea at any time before sentence if it is fair and just to do so." Minn. R. Crim. P. 15.05, subd. 2.

The manifest-injustice standard of Minn. R. Crim. P. 15.05, subd. 1, which is applicable here, requires withdrawal when a plea is invalid. *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007). To be valid, a guilty plea must be "accurate, voluntary and intelligent." *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994). "A defendant bears the burden of showing his plea was invalid." *Raleigh*, 778 N.W.2d at 94. The validity of a plea is a question of law that we review de novo. *Id.*

Appellant argues that he should be allowed to withdraw his guilty plea because his plea was inaccurate. An accurate plea "requires that the plea be supported by a proper factual basis[;] there must be sufficient facts on the record to support a conclusion that defendant's conduct falls within the charge to which he desires to plead guilty." *State v. Iverson*, 664 N.W.2d 346, 349 (Minn. 2003) (quotation omitted). "The factual-basis requirement is satisfied if the record contains a showing that there is credible evidence available which would support a jury verdict that defendant is guilty of at least as great a

crime as that to which he [pleaded] guilty." *State v. Genereux*, 272 N.W.2d 33, 34 (Minn. 1978).

Here, appellant entered an *Alford* plea to identity theft under Minn. Stat. § 609.527, subd. 2 (2012). That statute provides that "[a] person who transfers, possesses, or uses an identity that is not the person's own, with the intent to commit, aid, or abet any unlawful activity is guilty of identity theft." *Id.*

An *Alford* plea permits a defendant to plead guilty while maintaining his or her innocence if the defendant reasonably believes, and the record establishes, that the state has sufficient evidence to obtain a conviction. *Ecker*, 524 N.W.2d at 716 (citing *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 167 (1970)). "[C]areful scrutiny of the factual basis for the plea is necessary within the context of an *Alford* plea because of the inherent conflict in pleading guilty while maintaining innocence." *Theis*, 742 N.W.2d at 648-49. An *Alford* plea is constitutionally acceptable when "the State demonstrate[s] a strong factual basis for the plea and the defendant clearly expresse[s] his desire to enter the plea based on his belief that the State's evidence would be sufficient to convict him." *Id.* at 647 (quotation omitted). A district court may accept an *Alford* plea "if the court, on the basis of its interrogation of the accused and its analysis of the factual basis offered in support of the plea, reasonably concludes that there is evidence which would support a jury verdict of guilty and that the plea is voluntarily, knowingly, and understandingly entered." *Id.* (quotation omitted).

Appellant argues that the factual basis for his plea was insufficient because "the plea does not provide sufficient evidence that [he] committed the charged crime."

Specifically, appellant contends that, although he admitted to possessing several prepaid gift cards, he bought them at a store and did not know that the gift cards were tied to individuals. Appellant argues that because he did not intend to possess these individuals' identities and did not transfer or use their identities to obtain the prepaid gift cards, there was an insufficient factual basis to prove that he committed identity theft.

We disagree. A person is guilty of identity theft if an individual possesses an identity that is not the person's own with the intent to commit any unlawful activity. Minn. Stat. § 609.527, subd. 2. The plain language of the statue does not require an intent to possess an identity; it simply requires possession of an identity. *See id.* And under the identity-theft statute, "identity" can be "any name, number, or data transmission that may be used . . . to identify a specific individual *or* entity." Minn. Stat. § 609.527, subd. 1(d) (2012). The identity theft statute does, however, require an "intent to commit . . . any unlawful activity." Minn. Stat. § 609.527, subd. 2. Any "unlawful activity" means (1) "any felony violation of the laws of this state"; and (2) "any nonfelony violation of the laws of this state involving theft, theft by swindle, forgery, fraud, or giving false information to a public official." Minn. Stat. § 609.527, subd. 1(g) (2012).

Here, the factual basis offered by the state at the plea hearing demonstrates that appellant had several pre-paid gift cards in his possession. Although "having some appearance of being gift cards," the cards had numbers that were tied "to individual account holders with American Express, so that by using the gift card, the American Express account of that individual was actually being charged." Moreover, appellant

5

admitted to an investigating officer that he "obtained these pre-paid cards in Chicago . . . at a store," and that "he knew the gift cards he had in his possession and had utilized in the Twin Cities area, and particularly at the Holiday gas station store, were fraudulent." And although appellant claimed that he did not know that the fraudulent activity affected individual people, he admitted that he knew the gift cards were "defrauding banking institutions." The factual basis presented by the state establishes that appellant possessed gift cards containing the identity of another person or entity and that he intended to use those gift cards for an unlawful purpose. Thus, the factual basis for appellant's plea provides sufficient evidence that appellant committed the charged offense.

Appellant also contends that the factual basis was deficient because he "never agreed that the State's evidence was sufficient to convict him beyond a reasonable doubt." But again, appellant's argument is without merit. In *Theis*, the supreme court emphasized that when a defendant pleads guilty under an *Alford* plea, the "defendant's acknowledgment that the State's evidence is sufficient to convict is critical to the court's ability to serve the protective purpose of the accuracy requirements." 742 N.W.2d at 649. The court noted that the "best practice for ensuring this protection is to have the defendant specifically acknowledge on the record at the plea hearing that the evidence the State would likely offer against him is sufficient for a jury, applying a reasonable doubt standard, to find the defendant guilty of the offense to which he is pleading guilty." *Id.*

Here, the following colloquy occurred at the plea hearing:

> PROSECUTOR: Now, [appellant] do you believe that based on the evidence, the jury, applying the presumption of innocence and with a burden of proof beyond a reasonable

6

doubt, would find you guilty of identity theft involving eight or more direct victims?

APPELLANT:  I'm not understanding - -

. . . .

PROSECUTOR:  Do you . . . believe that given the evidence that I have described, if it was presented at trial, that a jury, applying a proof standard of beyond a reasonable doubt, do you believe that they would find you guilty of identity theft involving eight or more direct victims?

APPELLANT:  No, not really.

THE COURT:  So, here's the question - - I'm going to rephrase it.

APPELLANT:  Yeah, please do because I'm not understanding what he saying.

. . . .

THE COURT:  All right.  You heard the evidence that he has just now, right?

APPELLANT:  Yes.

THE COURT:  And you saw that he has submitted the police reports just now, right?

APPELLANT:  Yes.

THE COURT:  So the State's case has been presented, or summarized, by him.  Do you agree with that?

APPELLANT:  Yes.

THE COURT:  And do you understand that if you went to trial that's the evidence that would be presented to a jury?

APPELLANT:  Yes.

THE COURT:  And are you pleading guilty as an *Alford* plea because you believe that if all of that was set - - given to a jury, they would find you guilty of the charge of aiding and abetting identity theft based on that evidence?

. . . .

APPELLANT:  Okay.  Yes.

THE COURT:  Do you believe they would find you guilty?

APPELLANT:  I believe it's a possibility.

THE COURT:  Well, they would have to apply the reasonable doubt standard.  They would have to be - - find it proof beyond a reasonable doubt."

APPELLANT:  Okay.

THE COURT:  And it's always a possibility they would find you guilty.

APPELLANT:  Okay.

> THE COURT: But if you're pleading guilty because you don't want to risk going to trial, is that because you believe they would find you guilty?
> APPELLANT: Yes.
> THE COURT: Do you understand what you're saying to me?
> APPELLANT: I believe so.
> THE COURT: Do you understand what I'm saying to you?
> APPELLANT: Yes I do.
> THE COURT: Okay. Do you want to . . . plead guilty under the *Alford* standard because you don't want to risk going to trial and having them find you guilty. Is that accurate?
> APPELLANT: Yes.

We acknowledge that the factual basis could be clearer. But appellant admitted that he was pleading guilty because he did not "want to risk going to trial and having [a jury] find [him] guilty." He also admitted that he was pleading guilty under an *Alford* plea because he believed a jury "would find [him] guilty." Moreover, throughout the plea colloquy, the state and the district court repeatedly emphasized that the jury must find him guilty beyond a reasonable doubt. The record reflects that the requirements *Theis* sets out as necessary for a factual basis in an *Alford* plea were met. Therefore, appellant is not entitled to withdraw his guilty plea.

## II.

Appellant challenges the district court's restitution order requiring him to pay $1,000 in restitution to each of the 22 identified victims. Ordinarily, a district court has broad discretion to award restitution. *State v. Tenerelli*, 598 N.W.2d 668, 671 (Minn. 1999). But the identity-theft statute requires the district court to "order a person convicted of [identity theft] to pay restitution of not less than $1,000 to each direct victim of the offense." Minn. Stat. § 609.527, subd. 4(b) (2012). The statute defines a "direct

8

victim" as "any person or entity described in section 611A.01, paragraph (b), whose identity has been transferred, used or possessed in violation of this section." *Id.*, subd. 1(b) (2012). In its relevant part, Minn. Stat. § 611A.01(b) (2012) defines "victim" as "a natural person who incurs loss or harm as a result of a crime."

Appellant contends that because several of the victims "either did not request restitution or specifically stated that they did not want restitution," it "must be assumed that these persons did not suffer a loss." Appellant argues that because many of these victims did not suffer any loss, and restitution is "designed to restore or compensate victims for their loss," it was erroneous for the district court to award restitution where it was not requested.[1]

We disagree. The plain language of the identity-theft statute is clear and unambiguous; it provides that the district court "*shall* order a person convicted of [identity theft] to pay restitution of not less than $1,000 to each direct victim of the offense." Minn. Stat. § 609.527, subd. 4(b) (emphasis added). Thus, the district court was required to order appellant to pay restitution to each direct victim. *See* Minn. Stat. § 645.44, subd. 16 (2014) (stating that "'shall' is mandatory"). Moreover, in *Anderson v. State*, this court held that because the plain language of the identity-theft statute requires that all victims be paid a minimum of $1,000 in restitution, the victims need not submit

---

[1] The state contends that appellant forfeited this argument because he "never argued that he should not have to pay restitution" to 20 of the identity theft victims, nor did he provide "any basis for such an argument." *See State v. Beaulieu*, 859 N.W.2d 275, 278 n.3 (Minn. 2015). But at the sentencing hearing, appellant's attorney specifically argued that because only two victims requested restitution, he should only be responsible for paying restitution to those victims. Thus, appellant properly raised the argument below.

loss affidavits in order to be awarded restitution. 794 N.W.2d 137, 140-41 (Minn. App. 2011), *review denied* (Minn. Apr. 27, 2011). And in *State v. Moua*, this court held that "[a]n individual experiences 'loss or harm' as a result of identity theft when the individual either suffers economic loss or the theft involves the individual's name and private identifying information." 874 N.W.2d 812, 813 (Minn. App. 2016).

Here, the 22 identified victims were "direct victims" because they experienced "loss or harm" as a result of their names and private identifying information being involved in appellant's fraudulent activities. *See id.* Moreover, under *Anderson*, the victims need not actually request restitution. Rather, under the plain language of the statute, the district court is required to award restitution to all direct victims regardless of whether there was a specific request for restitution. And the statute does not provide an exception to the restitution requirement for instances in which a victim wishes to waive restitution. Therefore, under the plain language of the identity-theft statute, the district court did not err by ordering appellant to pay $1,000 in restitution to each of the 22 identified victims.

Appellant also contends that the district court's restitution order violated both his procedural and substantive due-process rights. But as the state points out, and as appellant concedes, he "did not argue [to the district court] that the imposition of restitution under these circumstances violated [his] constitutional right to due process." Therefore, appellant has forfeited his due-process argument. *See Beaulieu*, 859 N.W.2d at 278 n.3; *see also State v. Williams*, 794 N.W.2d 867, 874 (Minn. 2011) (stating that

10

this court will "not consider issues raised for the first time on appeal, even when those issues are . . . challenges to the constitutionality of a statute").

**Affirmed.**