# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A16-0198

State of Minnesota,
Respondent,

vs.

Emile Rey,
Appellant.

**Filed January 9, 2017**
**Affirmed**
**Muehlberg, Judge***

Dakota County District Court
File No. 19HA-CR-15-1909

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Tricia A. Loehr, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sharon E. Jacks, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Schellhas, Judge; and Muehlberg, Judge.

## S Y L L A B U S

The minimum-restitution provision in Minnesota Statutes section 609.527, subdivision 4 (2014), which requires a district court to order a person convicted of identity

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

theft to pay restitution of not less than $1,000 to each victim, does not violate substantive due process.

## O P I N I O N

**MUEHLBERG**, Judge

Appellant Emile Rey challenges his obligation to pay restitution in the amount of $66,000, arguing that: the identity-theft statute, which authorized the district court to order restitution, violates his substantive and procedural due-process rights; the district court abused its discretion because it failed to consider his ability to pay restitution; and the restitution amounted to an unconstitutional fine. We affirm.

## FACTS

Rey pleaded guilty to one count of identity theft involving more than eight direct victims. *See* Minn. Stat. § 609.527, subds. 2, 3(5) (2014). He admitted that he obtained cloned[1] credit cards between February and June 2015, using the credit of at least 66 victims without their permission. He used the cloned cards to purchase gift cards for personal use. Before sentencing, the state contacted 13 of the 66 victims and received six victim-impact statements.

At Rey's sentencing hearing, the district court ordered him to pay $66,000 in restitution, $1,000 to each direct victim, under the minimum-restitution provision of the

---

[1] Credit card cloning, or skimming, is a type of credit card theft where an individual swipes a card with a small device and copies the information held on the magnetic strip. That information is subsequently copied onto a counterfeit card, and the card is used as if the individual had the true owner's card. *See, e.g.*, *United States v. Keita*, 742 F.3d 184, 187 (4th Cir. 2014).

statute.  *See id.*, subd. 4.  Rey requested a hearing to challenge the amount of restitution. He argued that the minimum-restitution provision was unconstitutional because it violated his substantive and procedural due-process rights and that the restitution amounted to an unconstitutional fine.  The district court explained that it was under an affirmative obligation to order $1,000 to each direct victim, implicitly concluding that a victim only needed to meet the definition of a direct victim to be entitled to restitution.  Rey waived the restitution hearing.[2]  This appeal follows.

## ISSUES

I.      Does the minimum-restitution provision in Minnesota Statutes section 609.527, subdivision 4, violate Rey's substantive due-process rights?

II.     Does the minimum-restitution provision in Minnesota Statutes section 609.527, subdivision 4, violate Rey's procedural due-process rights?

III.    Did the district court fail to consider Rey's ability to pay before ordering restitution?

IV.     Is the minimum-restitution provision in Minnesota Statutes section 609.527, subdivision 4, an unconstitutional fine?

---

[2] In response to Rey's waiver of his right to challenge the restitution at a hearing, the state agreed that it would not later object to his constitutional challenge on the ground that he failed to preserve the issue.  While we are not bound by the parties' own agreement as to the scope of our review on appeal, we may nevertheless review issues properly raised before the district court.  *Cf. Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996).

## ANALYSIS

A district court has broad discretion to order restitution. *State v. Tenerelli*, 598 N.W.2d 668, 671 (Minn. 1999). Unlike fines, which are typically punitive in nature, the aim of restitution is to either rehabilitate a defendant or compensate the victim. *State v. Fader*, 358 N.W.2d 42, 48 (Minn. 1984). Generally, restitution may cover, but is not limited to, "any out-of-pocket losses resulting from the crime." *State v. Palubicki*, 727 N.W.2d 662, 666 (Minn. 2007) (citing to the general restitution statute, Minn. Stat. § 611A.04, subd. 1(a) (2006)). Victims need not actually make a request before a district court may order restitution. *State v. Gaiovnik*, 794 N.W.2d 643, 652 (Minn. 2011). Nevertheless, a factual basis must be demonstrated to support the restitution ordered. *State v. Latimer*, 604 N.W.2d 103, 105 (Minn. App. 1999). But under the identity-theft statute, the district court "shall order" $1,000 to each direct victim of identity theft. Minn. Stat. § 609.527, subd. 4; *Anderson v. State*, 794 N.W.2d 137, 140-41 (Minn. App. 2011) (explaining that the specific provisions of the identity-theft statute, which do not require proof of loss, control over the general restitution procedures, which require proof of loss), *review denied* (Minn. Apr. 27, 2011); *see* Minn. Stat. § 645.26, subd. 1 (2014) (designating special provisions as an exception to general provisions where both may be irreconcilable).

Rey challenges his restitution obligation, arguing that the minimum-restitution provision is unconstitutional because it violates his substantive and procedural due-process rights. The constitutionality of a statute presents a question of law, which we review de novo. *State v. Bussmann*, 741 N.W.2d 79, 82 (Minn. 2007). "Minnesota statutes are presumed constitutional, and our power to declare a statute unconstitutional should be

4

exercised with extreme caution and only when absolutely necessary." *In re Haggerty*, 448 N.W.2d 363, 364 (Minn. 1989). The party challenging constitutionality bears the burden to demonstrate that the statute is unconstitutional beyond a reasonable doubt. *State v. Craig*, 826 N.W.2d 789, 791 (Minn. 2013).

**I.      *Minnesota Statutes section 609.527, subdivision 4, does not violate Rey's substantive due-process rights.***

The Due Process clauses of the United States and Minnesota Constitutions prohibit the government from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amends. V, XIV; Minn. Const. art I, § 7. Substantive due process protects a fundamental right against "arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *State v. Hill*, 871 N.W.2d 900, 905-06 (Minn. 2015) (quotation and citation omitted). "This protection limits what the government may do in both its legislative and its executive capacities." *Id.* (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S. Ct. 1708, 1716 (1998)). When a law is challenged under the due-process clause, we apply an appropriate level of scrutiny to the law depending on whether a fundamental right is implicated. *In re Linehan*, 594 N.W.2d 867, 872 (Minn. 1999); *Gustafson v. Comm'r of Human Servs.*, 884 N.W.2d 674, 683 (Minn. App. 2016). If the law does not implicate a fundamental right, the state need only show that the law has a rational basis to serve a legitimate state interest. *Gustafson*, 884 N.W.2d at 683. If a law does implicate a fundamental right, that law will only stand if the state can show that it serves a compelling interest and is narrowly tailored to fit that interest. *Linehan*, 594 N.W.2d at 872; *Gustafson*, 884 N.W.2d at 683.

To address Rey's constitutional challenges, we must initially examine whether the minimum-restitution provision of the identity-theft statute implicates a fundamental right. A fundamental right is one that is so deeply rooted in our nation's history and tradition that neither liberty nor justice would exist if the right was sacrificed. *Washington v. Glucksberg*, 521 U.S. 702, 720-21, 117 S. Ct. 2258, 2268 (1997). But Minnesota courts have been reluctant to expand the concept of substantive due process because "guideposts for responsible decision-making in this unchartered area are scarce and open-ended." *Hill*, 871 N.W.2d at 905-06 (quotation and citation omitted).

Rey generally asserts that the minimum-restitution provision infringes on a fundamental right to property; specifically, the right to acquire and dispose of his money as he chooses. We disagree. Beyond the mere assertion that a fundamental right is implicated, Rey makes no effort to describe the right. Minnesota courts have never held that the right to property is a fundamental right that shields an individual from paying restitution for crimes of which he or she has been duly convicted. *See, e.g.*, Minn. Stat. § 611A.04 (2014) (giving victims of crimes a statutory right to receive restitution); *Hughes v. State*, 815 N.W.2d 602, 606 (Minn. 2012) (upholding restitution obligation under procedural due-process analysis); *Gaiovnik*, 794 N.W.2d at 650-51 (explaining that a plain language interpretation of restitution statute supports a conclusion that the legislature intended to give district courts authority to order restitution). Just as the victim's rights to property are forfeited by way of a defendant's criminal act, so too are the defendant's rights to property so far as is required to make the victim whole. *Cf. United States v. Knights*, 534 U.S. 112, 119, 122 S. Ct. 587, 591 (2001) ("Just as other punishments for criminal

6

convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens."); *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963, 2975 (1974) ("[T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed.").

Because no fundamental right is implicated, we address the constitutionality of the minimum-restitution provision under the rational-basis test. Under that test, we will uphold a statute so long as it bears a rational relationship to a legitimate purpose. *Gustafson*, 884 N.W.2d at 683. Rey acknowledges that the state has a legitimate interest to order restitution to compensate victims of crimes. He argues, however, that the minimum-restitution provision does not bear a rational relationship to that purpose because the $1,000 amount to each victim is untethered to a victim's actual loss. We disagree. The identity-theft statute is clear and unambiguous; under a plain reading of the statute, restitution is unquestionably tied to direct victims of identity theft. *See* Minn. Stat. § 609.527, subd. 1(b) (defining a direct victim as any person whose identity has been transferred, used, or possessed in violation of the identity theft statute); Minn. Stat. § 611A.01(b) (2014) (defining a victim as one who incurs a loss or harm as a result of the crime).[3]

---

[3] At his guilty-plea hearing, Rey admitted there were 66 victims. He does not dispute whether the 66 victims are direct victims. Issues not briefed are forfeited. *State v. Butcher*, 563 N.W.2d 776, 780-81 (Minn. App. 1997), *review denied* (Minn. Aug. 5, 1997).

7

In *State v. Moua*, we recognized the potential indeterminable future costs associated with identity theft. 874 N.W.2d 812, 818 (Minn. App. 2016) (interpreting whether the identity-theft statute authorized a district court judge to order restitution), *review denied* (Minn. Apr. 19, 2016). We acknowledged that the legislature intended direct victims to include those who suffered both economic and non-economic harm. *Id.* at 817. "[T]he legislature's decision to tie the severity of sentencing to either the number of direct victims or the total, combined economic loss . . . recognize[s] that culpability flows from both the amount of economic loss and the number of direct victims involved, regardless of the extent of their loss or harm." *Id.* (citing to Minn. Stat. § 609.527, subd. 3).

While it is true that the legislature could have required that restitution in identity-theft cases be calculated in the same fashion as the general restitution statute, "we implicitly recognized the legislature's intention to forego the procedural requirements contained in the general restitution statutes to make restitution broadly available to those affected by identity theft." *Id.* at 818. To reach this conclusion, we emphasized that victims of identity theft face lingering threats to their identity and financial security. *Id.*[4] While a five-minute

---

[4] Our review of the legislative history for the minimum-restitution provision reveals a concern for victims of identity theft, "the crime that keeps on taking." Hearing on S.F. No. 992 Before the S. Crime Prevention & Pub. Safety Comm. (Mar. 1, 2005) (statement of Amy Klobuchar, Hennepin County Attorney). In one instance, an individual did not discover she was a victim of identity theft until she was mistakenly arrested on a warrant for several charges of prostitution. Hearing on H.F. No. 929 Before the H. Pub. Safety Pol'y & Fin. Comm. (Mar. 9, 2005) (statement of Patrick Diamond, Assistant Hennepin County Attorney). Furthermore, victims were pursued by creditors for debts they did not undertake. *Id.* As a result, years after the fact, victims needed official court documents to prove that their identity was stolen and that they did not themselves incur the debt. *Id.* The threat of identity theft is real and pervasive.

telephone call to a bank may be sufficient to restore an individual account, a victim of identity theft may also need to request a new social security number, apply for a new passport, or alert creditors. *Id.* This information forms the basis of any individual's ability to set up an investment portfolio, travel abroad, or apply for a loan.

We do not believe the legislature intended identity-theft victims to incur actual pecuniary loss as a prerequisite to claiming restitution. *See* Minn. Stat. § 645.17(1) (2014) (explaining that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable). Therefore, because the means utilized in the statute are rationally related to a legitimate government purpose under rational-basis review, we conclude that the minimum-restitution provision of the identity-theft statute does not violate Rey's substantive due-process rights.

## II. *The minimum-restitution provision is constitutional because it does not violate Rey's procedural due-process rights.*

Rey argues next that the minimum-restitution provision violates his procedural due-process rights because it does not afford him a meaningful hearing to contest the order of restitution to each victim. We reject this argument.

Procedural due process refers to notice and opportunity to be heard at a meaningful time and in a meaningful manner. *Sawh v. City of Lino Lakes*, 823 N.W.2d 627, 632 (Minn. 2012). Appellate courts conduct a two-step analysis to determine whether the government has violated an individual's procedural due-process rights. *Id.* First, we determine whether the government has deprived the individual of an interest such as life, liberty, or property. *Id.* If no right is implicated, no process is due. *Id.* If such a right is implicated, our next

9

step requires this court to determine whether the procedures followed by the government were sufficient. *Id.*

In *Moua*, we implicitly recognized that the minimum-restitution provision raises concerns that an individual's right to property may be deprived by an order of restitution. 874 N.W.2d at 816.[5] Nevertheless, we determined that the procedures employed by the government were sufficient to provide a defendant with notice and an opportunity to challenge the restitution. *Id.* at 815 (explaining that the defendant had notice at his plea hearing that the state could seek restitution and had an opportunity to challenge restitution at a separate hearing).

Before Rey's plea hearing, the district court ordered a presentence-investigation report. That report recommended that Rey be ordered to pay restitution in the amount of $1,000 to each victim (totaling $66,000). At his plea hearing, Rey admitted to using the credit cards of 66 victims. Although the record at the time of his plea did not make clear that restitution would be sought, the record at sentencing establishes that restitution would be based on the harm caused to the direct victims of his crime. While he objected to the restitution and requested the district court to hold a restitution hearing, where he could have challenged the amount of restitution, Rey subsequently waived such a hearing. Based upon

---

[5] While we concluded that the minimum-restitution provision does not violate substantive due process, which protects a fundamental right from arbitrary government action regardless of the procedures employed, we nevertheless held that process may be due when a district court orders restitution. *See Moua*, 874 N.W.2d at 816; *Hill*, 871 N.W.2d at 905-06.

10

our holding in *Moua*, we conclude that the statute does not deprive Rey of his procedural due-process rights. *See id.* at 816.

### III. *The district court did not abuse its discretion because it properly considered Rey's ability to pay before ordering him to pay restitution.*

Rey argues that the court committed reversible error by ordering him to pay restitution without considering his ability to pay. We disagree. The pre-plea, presentence-investigation report contained information about his income, resources, and obligations. The report indicated his ability to pay.[6] At sentencing, Rey said that he had almost graduated from college and wanted to get a job. In light of Rey's ability to pay, the district court highlighted the pervasiveness of his credit-card cloning scheme and the large number of victims affected. Further, the district court explained that it "looked through everything that was submitted." Because we have upheld restitution orders even in cases where a defendant may not be able to pay the amount ordered, we conclude that the district court did not abuse its discretion because it properly considered Rey's ability to pay when it ordered restitution. *See State v. Alexander*, 855 N.W.2d 340, 344-45 (Minn. App. 2014) (explaining the district court's need to consider the harm and loss to the victims when ordering restitution) (citations omitted); *State v. Miller*, 842 N.W.2d 474, 479 (Minn. App. 2014) (explaining that a district court does not need to issue specific findings on the defendant's ability to pay), *review denied* (Minn. Apr. 15, 2014).

---

[6] The district court judge's imposition of a minimum fine of $50 acknowledges that Rey is indigent. This fact demonstrates that the district court judge properly considered his ability to pay.

11

### IV.     *The restitution did not amount to an unconstitutional fine.*

Rey argues that his obligation to pay restitution was an unconstitutional fine because the minimum-restitution provision is not connected to the victims' actual losses. He asserts that because the restitution was effectively a fine, a jury trial was required. *Cf. Blakely v. Washington*, 542 U.S. 296, 301-02, 124 S. Ct. 2531, 2536-37 (2004) (concluding that any fact which increases the penalty for a crime beyond a statutory maximum must be submitted to a jury).

As we have previously explained, "[t]he minimum-restitution provision reflects the legislature's recognition that while it is difficult to quantify loss or harm occasioned by identity theft, victims nonetheless experience material detriment." *Moua*, 874 N.W.2d at 818; *cf. Fader*, 358 N.W.2d at 48 (clarifying that because the aim of restitution is to compensate the victim, its amount should be based on the victim's injury).[7] And because Rey is not entitled to a jury trial to determine the underlying facts that form the basis for the amount of restitution, the restitution ordered is not an unconstitutional fine. *See State v. Maxwell*, 802 N.W.2d 849, 851-52 (Minn. App. 2011) (holding that restitution is not a fact which increases the penalty for a crime because Minnesota statutes do not provide a statutory maximum for restitution amounts), *review denied* (Minn. Oct. 26, 2011).

### D E C I S I O N

Because the minimum-restitution provision in Minnesota Statutes section 609.527, subdivision 4, is not an unconstitutional fine and does not violate the substantive right to

---

[7] In contrast, a fine is a payment made to the government as punishment for a crime. *United States v. Bajakajian*, 524 U.S. 321, 327, 118 S. Ct. 2028, 2033 (1998).

12

property or procedural due process, and because the district court judge properly considered Rey's ability to pay before ordering restitution, we affirm.

**Affirmed.**