# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A15-1943

Jason Daniel Gustafson,
Relator,

vs.

Commissioner of Human Services,
Respondent.

**Filed July 25, 2016**
**Affirmed**
**Johnson, Judge**

Department of Human Services
License No. 1078693

Patrick W. Michenfelder, Throndset Michenfelder, LLC, St. Michael, Minnesota; and

Eric S. Taubel, Gustafson Gluek PLLC, Minneapolis, Minnesota (for relator)

Kathleen A. Heaney, Sherburne County Attorney, Tim Sime, Assistant County Attorney, Elk River, Minnesota (for respondent)

Considered and decided by Johnson, Presiding Judge; Stauber, Judge; and Kirk, Judge.

## S Y L L A B U S

Subdivision 3(a) of section 245C.15 of the Minnesota Statutes, which provides that a person is disqualified from a program licensed by the department of human services for ten years after "the discharge of the sentence imposed," applies only to a person who is disqualified because of a criminal conviction. Subdivision 3(e) of section 245C.15, which provides, among other things, that a person is disqualified for ten years after "the date the

Alford Plea is entered in court," applies only to a person who is disqualified because of a judicial proceeding that does not result in a criminal conviction.

**O P I N I O N**

**JOHNSON**, Judge

Jason Daniel Gustafson's wife applied for a license to operate a child-care program in their home. The department of human services conducted a background study and disqualified Gustafson from having direct contact with or access to persons served by the child-care program until 2020 because he was convicted of criminal vehicular operation in 2003. After Gustafson requested reconsideration, the commissioner of human services upheld the disqualification but granted a variance that allows a license to issue so long as Gustafson abides by certain conditions. On appeal, Gustafson challenges his disqualification on the grounds that the statute authorizing his disqualification is unconstitutional and that the commissioner erred by denying his request for reconsideration of his disqualification. We conclude that the statute is not unconstitutional and that the commissioner did not err by denying reconsideration. Therefore, we affirm.

**FACTS**

On August 11, 2003, Gustafson pleaded guilty in the Hennepin County District Court to criminal vehicular operation, in violation of Minn. Stat. § 609.21, subd. 2b(3) (2002) (renumbered Minn. Stat. § 609.2113, subd. 3(3), by 2014 Minn. Laws ch. 180, § 7, at 285-86). The criminal complaint alleged that Gustafson caused a multi-vehicle accident on interstate highway 94 while he was intoxicated and that drivers of two other vehicles

were injured. Gustafson's sentence included, among other things, a three-year term of probation.

In early 2015, Gustafson's wife applied for a license to operate a child-care program in the couple's home in Elk River. Gustafson's wife was required by the Department of Human Services Background Studies Act, Minn. Stat. §§ 245C.01-.34 (2014 & Supp. 2015), to submit to a background study, and Gustafson also was required to do so because he was living in the home where child-care services would be provided. *See* Minn. Stat. § 245C.03, subd. 1(a)(1)-(2). In June 2015, a Sherburne County social worker determined that Gustafson is disqualified from having direct contact with or access to persons served by a child-care program because of his 2003 conviction. *See* Minn. Stat. §§ 245C.14-15.

In July 2015, Gustafson requested reconsideration of his disqualification. *See* Minn. Stat. § 245C.21. He argued that the victims of his criminal offense were not seriously injured, that the offense took place 12 years earlier, that he no longer drinks alcoholic beverages and has completed a treatment program, and that he would not have any responsibilities in the child-care program. Gustafson challenged the disqualification by requesting a set-aside or, in the alternative, a variance.

In September 2015, a deputy inspector general in the licensing division of the department of human services, on behalf of the commissioner, denied Gustafson's request to set aside the disqualification. *See* Minn. Stat. § 245C.22, subd. 1. The letter ruling reiterates that Gustafson's prior conviction is a proper basis for disqualification. The letter ruling also states that Gustafson's ten-year disqualification period commenced on April 23, 2010, and expires on April 23, 2020. Even though the commissioner did not set aside

3

Gustafson's disqualification, the commissioner granted a variance, with conditions that "minimize the risk of harm to people receiving services." *See* Minn. Stat. § 245C.30, subd. 1(a). Specifically, the variance precludes Gustafson from, among other things, being present when persons served by the child-care program are present, providing transportation to persons served by the program, or being used as a substitute caregiver.

Gustafson appeals by way of a writ of certiorari.

## ISSUES

I.      Does section 245C.15 of the Minnesota Statutes violate Gustafson's constitutional rights to equal protection or due process?

II.      Did the commissioner err by denying Gustafson's request for reconsideration of his disqualification?

## ANALYSIS

## I.

Gustafson argues that section 245C.15 of the Minnesota Statutes, which is the legal basis of his disqualification, is unconstitutional. His argument is premised on his assertion that the statute is flawed in its manner of determining the timing of his disqualification. He contends that, to protect his constitutional rights, his disqualification, which began on the date he was discharged from his sentence, should have begun on the date he pleaded guilty.

**A.      Text of Statute**

We begin by reviewing the language of the Department of Human Services Background Studies Act. Under the act, the commissioner shall conduct a background study on a person seeking a license to operate a child-care program and on certain other

4

persons who will work for a licensed program or will live at a location where licensed services will be provided. Minn. Stat. § 245C.03, subd. 1(a). The commissioner shall disqualify a person subject to a background study if the study reveals "a conviction of, admission to, or Alford plea[1] to one or more crimes listed in section 245C.15." Minn. Stat. § 245C.14, subd. 1(a)(1).

If a person is disqualified because of criminal conduct, the duration of the disqualification depends on the severity of the offense. The most serious forms of criminal conduct require permanent disqualification. Minn. Stat. § 245C.15, subd. 1. Less-serious

---

[1] In *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160 (1970), the United States Supreme Court held that a defendant's admission of "his participation in the acts constituting the crime" is "not a constitutional requisite to the imposition of criminal penalty." *Id.* at 37, 91 S. Ct. at 167. The Minnesota Supreme Court expressly approved of *Alford* pleas in *State v. Goulette*, 258 N.W.2d 758 (Minn. 1977). The supreme court held that, in appropriate circumstances, a district court "may accept a plea of guilty by an accused even though the accused protests that he is innocent." *Id.* at 761. The supreme court acknowledged that "there are situations" in which a decision to plead guilty despite a claim of innocence "is a rational decision." *Id.* The supreme court cited the example of the defendant in *Alford*, who maintained his innocence despite evidence that created a "strong probability that he would be convicted" of first-degree murder and chose to plead guilty rather than face the possibility of a death sentence if a jury were to find him guilty. *Id.* (citing *Alford*, 400 U.S. at 37, 91 S. Ct. at 167). Under Minnesota law, an *Alford-Goulette* plea is valid if the defendant "agrees that evidence the State is likely to offer at trial is sufficient to convict" and if the district court independently determines that there is a strong factual basis for a finding of guilty and a strong probability that a jury would find the defendant guilty. *State v. Theis*, 742 N.W.2d 643, 649 (Minn. 2007). "An *Alford* plea is an appealing resolution for defendants who, despite maintaining their innocence, have 'nothing to gain by a trial and much to gain by pleading,' such as avoiding a harsher sentence." *Doe 136 v. Liebsch*, 872 N.W.2d 875, 879 (Minn. 2015) (quoting *Alford*, 400 U.S. at 37, 91 S. Ct. at 167). Nonetheless, "A conviction based upon an *Alford* plea generally carries the same penalties and collateral consequences as a conventional guilty plea." *Id.* at 880.

forms of criminal conduct require disqualification for either 15 years, 10 years, or 7 years. *Id.*, subds. 2-4.

In this case, Gustafson's conviction of criminal vehicular operation requires a ten-year disqualification. *See id.*, subd. 3(a). The disputed issue on appeal is when the ten-year disqualification period begins to run and when it expires. The commissioner's position is that Gustafson's disqualification period began on the date of "the discharge of the sentence imposed . . . for the offense." *See id.* Based on information that Gustafson was discharged from his sentence on April 23, 2010 (which date Gustafson challenges as being incorrect), the commissioner determined that Gustafson is disqualified until April 23, 2020. Gustafson's position is that his disqualification period should have begun on August 11, 2003, the date of his guilty plea, and that his disqualification expired on August 11, 2013.

Gustafson's argument is based on the third sentence of the following paragraph within section 245C.15, subdivision 3:

> When a disqualification is based on a judicial determination other than a conviction, the disqualification period begins from the date of the court order. When a disqualification is based on an admission, the disqualification period begins from the date of an admission in court. *When a disqualification is based on an Alford Plea, the disqualification period begins from the date the Alford Plea is entered in court.* When a disqualification is based on a preponderance of evidence of a disqualifying act, the disqualification date begins from the date of the dismissal, the date of discharge of the sentence imposed for a conviction for a disqualifying crime of similar elements, or the date of the incident, whichever occurs last.

*Id.*, subd. 3(e) (emphasis added). Gustafson acknowledges that he did not enter an *Alford* plea but contends that section 245C.15, subdivision 3, is unconstitutional to the extent that a person who is convicted of a crime after entering an *Alford* plea is allowed to complete the ten-year disqualification period sooner than a person who is convicted of a crime after entering a conventional guilty plea.

## B.     Interpretation of Statute

The commissioner argues that Gustafson's constitutional challenge is based on an incorrect interpretation of the pertinent provisions of the Department of Human Services Background Studies Act. In her responsive brief, the commissioner states, first, that the department consistently has interpreted subdivision 3(a) of section 245C.15 to apply if a person has a criminal conviction of an offense listed in that subdivision, regardless of the manner of the adjudication of guilt, and, second, that the department consistently has interpreted subdivision 3(e) of section 245C.15 to apply only if a person is determined to have engaged in conduct that violates the criminal statutes listed in that subdivision but does *not* have a criminal conviction for that conduct. Specifically, the commissioner's brief asserts, "DHS has historically interpreted the statute as requiring the Commissioner to treat all convictions for disqualifying crimes equally, regardless of whether the conviction was based on a guilty plea, Alford plea or jury verdict."[2] The commissioner urges the court to adopt the department's pre-existing interpretation of the statute.

---

[2]The commissioner suggests in her brief that a person could enter an *Alford* plea but not have a criminal conviction if, for example, a district court stayed adjudication. *See State v. Martin*, 849 N.W.2d 99, 102-03 (Minn. App. 2014), *review denied* (Minn. Sept. 24, 2014). We also can envision a scenario in which a district court adjudicates a person guilty

7

We begin the task of interpreting a statute by asking "whether the statute's language, on its face, is ambiguous." *American Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn. 2001). A statute is unambiguous if it is susceptible to only one reasonable interpretation. *Lietz v. Northern States Power Co.*, 718 N.W.2d 865, 870 (Minn. 2006). If a statute is unambiguous, we "interpret the words and phrases in the statute according to their plain and ordinary meanings." *Graves v. Wayman*, 859 N.W.2d 791, 798 (Minn. 2015). A statute is ambiguous, however, "if it is reasonably susceptible to more than one interpretation." *Lietz*, 718 N.W.2d at 870. If a statute is ambiguous, we apply "the canons of statutory construction to determine its meaning." *County of Dakota v. Cameron*, 839 N.W.2d 700, 705 (Minn. 2013).

Section 245C.15, subdivision 3, is ambiguous to the extent that it applies to a person who was convicted of and sentenced for a crime after entering an *Alford* plea. In that situation, one reasonable interpretation of subdivision 3 is that the person's disqualification period begins to run on the date of "the discharge of the sentence imposed . . . for the offense." Minn. Stat. § 245C.15, subd. 3(a). Another reasonable interpretation of subdivision 3 is that the person's disqualification period begins to run on "the date the Alford Plea is entered in court." *Id.*, subd. 3(e). Confusion may arise because there appear to be two sources of law, with two different rules, for a person who was convicted of a crime after entering an *Alford* plea. Because the language of section 245C.15 is

---

but does not impose a sentence, which would mean that the person is not convicted of a crime. *See* Minn. R. Crim. P. 27.03, subd. 8; *State v. LaTourelle*, 343 N.W.2d 277, 284 (Minn. 1984).

"reasonably susceptible to more than one interpretation" in that situation, it is ambiguous. *See Lietz*, 718 N.W.2d at 870.

Because the statute is ambiguous, we may consider the legislative history of the statute to determine the legislature's intent. *Laase v. 2007 Chevrolet Tahoe*, 776 N.W.2d 431, 435 n.2 (Minn. 2009); *Arcadia Dev. Corp. v. County of Hennepin*, 528 N.W.2d 857, 860 (Minn. 1995). Before 2007, there was no reference to an *Alford* plea in the act. Minn. Stat. §§ 245C.01-.32 (2006). In 2007, the legislature amended section 245C.14, subdivision 1(a), to require the commissioner to disqualify a person not only for a criminal conviction or an admission to criminal conduct but also for an *Alford* plea. 2007 Minn. Laws ch. 112, § 33, at 693. In 2009, the legislature amended section 245C.15 by adding language to subdivision 3(e) to provide that, if a disqualification is based on an *Alford* plea, the disqualification period begins on the date the *Alford* plea is entered. 2009 Minn. Laws ch. 142, art. 2, § 29, at 1966-67. These amendments appear to have been designed for the situation in which a person enters an *Alford* plea (which, by definition, does not require an admission to criminal conduct, *see Doe 136*, 872 N.W.2d at 879-80) but is not convicted of a crime, either because of a stay of adjudication or because of some other resolution of a criminal charge in which a sentence is not imposed. We may presume that the legislature did not intend its references to *Alford* pleas in sections 245C.14 and 245C.15 to overlap with its references to criminal convictions, else one provision or the other would be superfluous. *See Owens v. Federated Mut. Implement & Hardware Ins. Co.*, 328 N.W.2d 162, 164 (Minn. 1983) (stating that "no word, phrase or sentence" of statutes "should be deemed superfluous, void, or insignificant"). Thus, the 2007 and 2009 amendments to

9

account for *Alford* pleas indicate that the legislature intended those provisions to apply only to persons who were not convicted of a crime.

Because the statute is ambiguous, we also may consider the commissioner's interpretation of the statute. "[A]n agency's interpretation of the statutes it administers is entitled to deference and should be upheld, absent a finding that it is in conflict with the express purpose of the Act and the intention of the legislature." *Geo. A. Hormel & Co. v. Asper*, 428 N.W.2d 47, 50 (Minn. 1988). In this case, there is no indication that the commissioner's interpretation is in conflict with the purpose of the Act, which is to "protect the children and vulnerable adults who are served by licensed facilities" by "identifying and disqualifying individuals whose past behavior suggests placing them in direct contact with children . . . poses an unacceptable risk of harm." *Murphy v. Commissioner of Human Servs.*, 765 N.W.2d 100, 106 (Minn. App. 2009). Accordingly, we are inclined to defer to the commissioner's interpretation of section 245C.15. *See Frieler v. Carlson Mktg. Grp., Inc.*, 751 N.W.2d 558, 567 (Minn. 2008) (interpreting statute in manner consistent with agency's interpretation).

In addition, our analysis is informed by the canon of constitutional avoidance. "Where possible," appellate courts "should interpret a statute to preserve its constitutionality." *Hutchinson Tech., Inc. v. Commissioner of Revenue*, 698 N.W.2d 1, 18 (Minn. 2005). "The canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction; and the canon functions as *a means of choosing between them.*" *Clark v. Martinez*, 543 U.S. 371, 385, 125 S. Ct. 716, 726 (2005) (emphasis in original).

10

The canon applies only if a statute is ambiguous. *State v. Irby*, 848 N.W.2d 515, 521-22 (Minn. 2014). If a person convicted after an *Alford* plea would be relieved from disqualification at an earlier date than a person convicted after a conventional guilty plea, it is conceivable that the statute could be declared unconstitutional, as Gustafson contends, because it would treat similarly situated persons dissimilarly. But the constitutional infirmity asserted by Gustafson would not arise under the commissioner's interpretation of the statute. Under the commissioner's interpretation, a person convicted after an *Alford* plea and a person convicted after a conventional guilty plea would be treated alike in the sense that each would be relieved from disqualification based on the date of the discharge of the applicable sentence.

Thus, in light of the legislature's likely intent when amending sections 245C.14 and 245C.15 to address *Alford* pleas, the commissioner's interpretation of section 245C.15, and the doctrine of constitutional avoidance, we interpret section 245C.15 to make separate provisions for persons disqualified by a criminal conviction and persons disqualified for other reasons. Thus, subdivision 3(a) of section 245C.15, which provides that a person is disqualified for ten years after "the discharge of the sentence imposed," applies only to a person who is disqualified because of a criminal conviction, and subdivision 3(e) of section 245C.15, which provides, among other things, that a person is disqualified for ten years after "the date the Alford Plea is entered in court," applies only to a person who is disqualified because of a judicial proceeding that does not result in a criminal conviction.

11

**C.**     **Constitutional Challenges**

We now turn to Gustafson's arguments that section 245C.15 of the Department of Human Services Background Studies Act is unconstitutional. We apply a *de novo* standard of review to the question whether a statute is constitutional. *Gluba ex rel. Gluba v. Bitzan & Ohren Masonry*, 735 N.W.2d 713, 719 (Minn. 2007). We presume that Minnesota statutes are constitutional and will declare a statute unconstitutional only "with extreme caution and only when absolutely necessary." *Id.*

**1.**     ***Equal Protection***

Gustafson first argues that section 245C.15 violates his constitutional right to equal protection.

The Equal Protection Clause of the United States Constitution provides, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1; *see also* Minn. Const. art. I, § 2. The federal and state equal-protection provisions are "analyzed under the same principles." *State v. Johnson*, 813 N.W.2d 1, 11 (Minn. 2012) (quotation omitted). Neither provision absolutely "'forbid[s] classifications'"; both provisions "'keep[] governmental decisionmakers from treating differently persons who are in all relevant aspects alike.'" *Id.* at 12 (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S. Ct. 2326, 2331 (1992)). In short, "similarly situated individuals shall be treated alike, but only invidious discrimination is deemed constitutionally offensive." *State v. Garcia*, 683 N.W.2d 294, 298 (Minn. 2004) (quotation omitted).

12

The threshold issue in our equal-protection analysis is whether the "claimant is treated differently from others to whom the claimant is similarly situated in all relevant respects." *Johnson*, 813 N.W.2d at 12. This requirement reflects the principle that the state is not required to treat individuals who are "different in fact or opinion as though they were the same in law." *State v. Behl*, 564 N.W.2d 560, 568 (Minn. 1997). If the threshold "similarly situated" requirement is satisfied, the next issue is whether there is a "rational basis" for the different treatment, so long as the statute does not implicate a "suspect classification or a fundamental right." *Garcia*, 683 N.W.2d at 298.

Gustafson contends that section 245C.15 violates his right to equal protection on the ground that a person who is convicted of a crime after entering a conventional guilty plea is treated differently from a person who is convicted of a crime after entering an *Alford* plea. Gustafson's premise is incorrect in light of our interpretation of the statute. *See supra* part I.B. Thus, Gustafson cannot satisfy the threshold requirement that he "is treated differently from others to whom [he] is similarly situated in all relevant respects." *See Johnson*, 813 N.W.2d at 12. His failure to satisfy the threshold requirement is a sufficient basis for concluding that his equal protection claim is without merit. *See State v. Cox*, 798 N.W.2d 517, 521 (Minn. 2011). Thus, the statute does not violate Gustafson's constitutional right to equal protection.

### 2. *Due Process*

Gustafson also argues that section 245C.15 violates his constitutional right to substantive due process.

The doctrine of substantive due process is based on the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See* U.S. Const. amend. XIV, § 1. The doctrine "protects individuals from certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *In re Linehan*, 594 N.W.2d 867, 872 (Minn. 1999) (quotations omitted). In the context of disqualification from a state-licensed program, "due process demands that a statute not be an unreasonable, arbitrary or capricious interference and requires at minimum that the statute bear a rational relation to the public purpose sought to be served." *Obara v. Minnesota Dep't of Health*, 758 N.W.2d 873, 879 (Minn. App. 2008) (quotation omitted).

The first step of the analysis is to ask whether there is a fundamental right at stake. *See Northwest v. LaFleur*, 583 N.W.2d 589, 591 (Minn. App. 1998), *review denied* (Minn. Nov. 17, 1998). If so, "the state must show that its action serves a compelling government interest." *Id.* (citing *In re Blodgett*, 510 N.W.2d 910, 914 (Minn. 1994)). If there is no fundamental right at stake, we ask whether the statute has a rational basis, which requires the state to show only that the statute "is a reasonable means to a permissive object." *State v. Bernard*, 859 N.W.2d 762, 773 (Minn. 2015) (quotation omitted), *aff'd sub nom. Birchfield v. North Dakota*, No. 14-1468, 2016 WL 3434398 (U.S. June 23, 2016). The supreme court recently noted that it is "reluctant to expand the concept of substantive due process because guideposts for responsible decision-making in this unchartered area are scarce and open-ended." *State v. Hill*, 871 N.W.2d 900, 905-06 (Minn. 2015) (quotation omitted).

14

Gustafson does not contend that a fundamental right is at stake and does not cite caselaw suggesting that having direct contact with or access to persons served by a licensed child-care program is a fundamental right. Accordingly, the question is whether the statute has a rational basis. *See Bernard*, 859 N.W.2d at 773. Gustafson cannot establish that the statute is not "a reasonable means to a permissive object." *Id.* (quotation omitted). The object of the act is to protect the public, particularly "the health and safety of individuals who are vulnerable due to their age or their physical, mental, cognitive, or other disabilities." *Obara*, 758 N.W.2d at 779. This interest is "paramount." *Id.* at 880. Determining the disqualification periods in the manner described in subdivisions 3(a) and 3(e) is a reasonable means of achieving the object of the act.

Gustafson's substantive due process claim is based on three specific contentions. First, he contends that the statute is arbitrary and capricious because it allows a person to be relieved from disqualification at an earlier date if the person entered an *Alford* plea instead of a conventional guilty plea. This contention is incorrect in light of our interpretation of the statute. *See supra* part I.B.

Second, Gustafson contends that the statute gives rise to arbitrary and capricious enforcement because some prosecutors "may be more or less likely to offer deals with lower offense levels." The possibility or likelihood that a prosecutor will make different prosecutorial decisions in different cases does not make section 245C.15 unconstitutional. "Prosecutors routinely make such decisions" and routinely make "basic choices about allocating prosecutorial resources," which "often mean[s] that those who commit the same crime do not always face the same legal consequences." *In re Welfare of B.A.H.*, 845

15

N.W.2d 158, 166 (Minn. 2014). But the existence of broad prosecutorial discretion does not make a statute unconstitutional because, "'under the separation-of-powers doctrine, a court should not interfere with the prosecutor's exercise of that discretion.'" *Id.* (quoting *State v. Foss*, 556 N.W.2d 540, 540 (Minn. 1996) (order), in parenthetical). Rather, a prosecutor's "conscious exercise of some selectivity in enforcement" is constitutionally suspect only if the prosecutor does not have a rational basis for his or her actions. *Id.* at 165 (citing *Oyler v. Boles*, 368 U.S. 448, 456, 82 S. Ct. 501, 506 (1962)). Gustafson does not contend that the prosecutor in his 2003 case did not have a rational basis for his or her actions.

Third, Gustafson contends that the statute is arbitrary and capricious in its application in this case because the commissioner relied on inaccurate information concerning the date on which he was discharged from probation. The commissioner understood that Gustafson was discharged from probation on April 23, 2010, and, accordingly, decided that he is disqualified until April 23, 2020. Gustafson contends that he actually was discharged from probation on August 29, 2006. In support of this contention, he refers to e-mail messages from a Hennepin County probation officer and updated court records, which appear to indicate that he was discharged on August 29, 2006, as he contends. But the documents to which Gustafson refers were created after the commissioner's decision and, thus, are not part of the appellate record and may not be considered by this court in this appeal. *See Stephens v. Board of Regents of Univ. of Minn.*, 614 N.W.2d 764, 769 (Minn. App. 2000), *review denied* (Minn. Sept. 26, 2000). The commissioner notes in her brief, however, that Gustafson retains the right to seek relief

16

from the commissioner on this ground because he is not precluded "from subsequently demonstrating . . . the actual date of the discharge of his sentence." In any event, whether the information available to the commissioner was correct or incorrect does not affect the constitutionality of the statute.

For these reasons, the statute does not violate Gustafson's constitutional right to substantive due process.

### 3. Overbreadth

Gustafson last argues that section 245C.15 is unconstitutional because it is overly broad. This court has stated, "[A] governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." *Obara*, 758 N.W.2d at 880 (alteration in original) (quoting *Griswold v. Connecticut*, 381 U.S. 479, 487, 85 S. Ct. 1678, 1682 (1965)). In general, the overbreadth doctrine is relevant only to a facial challenge to a statute on First Amendment grounds. *See United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100 (1987); *State v. Machholz*, 574 N.W.2d 415, 419 (Minn. 1998); *see also State v. Washington-Davis*, ___ N.W.2d ___, 2016 WL 3541745, at *4-7 (Minn. June 29, 2016). For that reason, this court in *Obara* declined to consider a relator's overbreadth argument to the extent that it challenged other applications of the statute. *See Obara*, 758 N.W.2d 880-81. For the same reasons, we decline to consider Gustafson's overbreadth argument.

17

**II.**

Gustafson also argues that the commissioner erred by denying his request for reconsideration of his disqualification.

A disqualified person may request reconsideration of a disqualification decision by showing that the commissioner relied on erroneous information or that he or she does not pose a risk of harm to persons served by a licensed program. Minn. Stat. § 245C.21, subds. 1, 3. If the disqualified person "has submitted sufficient information to demonstrate that [he or she] does not pose a risk of harm," the commissioner may set aside the disqualification.[3] Minn. Stat. § 245C.22, subd. 4(a); *see also Johnson v. Commissioner of Health*, 671 N.W.2d 921, 923 (Minn. App. 2003). This court reviews the commissioner's decision, a quasi-judicial agency decision not subject to the Minnesota Administrative Procedure Act, to determine whether the decision is "arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it." *Anderson v. Commissioner of Health*, 811 N.W.2d 162, 165 (Minn. App. 2012) (quotation omitted), *review denied* (Minn. Apr. 17, 2012).

In determining whether a disqualified person poses a risk of harm, the commissioner must consider nine factors: (1) "the nature, severity, and consequences of the event or events that led to the disqualification"; (2) whether more than one disqualifying event occurred; (3) the age and vulnerability of the victim of the disqualifying event; (4) "the harm suffered by the victim"; (5) the "vulnerability of persons served by the program";

---

[3]The commissioner does not argue that Gustafson's set-aside request is untimely. *See* Minn. Stat. § 245C.24, subd. 3.

18

(6) "the similarity between the victim and persons served by the program"; (7) the amount of time without a reoccurrence of a similar event; (8) whether the disqualified person successfully completed training or rehabilitation that is pertinent to the disqualifying event; and (9) any other relevant information. Minn. Stat. § 245C.22, subd. 4(b). "[A]ny single factor . . . may be determinative of the commissioner's decision whether to set aside the individual's disqualification." *Id.*, subd. 3.

In this case, the commissioner determined that the first, fourth, fifth, seventh, eighth, and ninth factors indicated that Gustafson would pose a risk of harm to persons served by a child-care program. With respect to the first factor, the commissioner found that criminal vehicular operation is a violent crime, that Gustafson drove with an alcohol concentration of 0.283, and that two other persons sustained injuries. With respect to the fourth factor, the commissioner found that both victims experienced physical pain, were treated at a hospital, and sustained financial harm. With respect to the fifth factor, the commissioner found that Gustafson's wife's child-care program would serve infants and children, who are particularly vulnerable due to their young age. With respect to the seventh factor, the commissioner found that Gustafson's crime occurred 12 years earlier but that he also was convicted of third-degree driving while impaired (DWI) in 2014. With respect to the eighth factor, the commissioner found that Gustafson completed probation but had multiple probation violations, that he is again on probation until 2017, and that he completed a treatment course in 2014 but that there is a lack of evidence that he presently is sober. With respect to the ninth factor, the commissioner found that Gustafson has two non-

19

disqualifying DWI convictions, that he has attempted to minimize his misconduct, and that a variance is appropriate.

Gustafson challenges the commissioner's decision by arguing that his disqualifying conviction occurred more than 12 years ago, that he will not be responsible for caring for children in his wife's child-care program, that he completed a rehabilitation program, that the ages of the victims of his disqualifying crime are unknown, and that the victims sustained only neck and back pain. He contends that "there is no rational connection between the facts and the agency's decision."

Gustafson's argument does not provide any reasons to question the evidentiary basis of the commissioner's findings. Rather, he simply challenges the commissioner's judgment that, in light of her findings, he is not entitled to a set-aside of his disqualification. Gustafson's argument is inconsistent with the limited, deferential nature of certiorari review, which seeks to "minimize the judicial intrusion into administrative decision-making" and to "avoid usurpation of the executive body's administrative prerogatives." *Tischer v. Housing & Redevelopment Auth. of Cambridge*, 693 N.W.2d 426, 429 (Minn. 2005). In addition, Gustafson's argument ignores the fact that he had a relatively high alcohol concentration when he committed his disqualifying crime and that he engaged in similar criminal conduct as recently as 2014.

In light of the relevant facts and circumstances and the deferential nature of our review, we conclude that the commissioner did not err by determining that Gustafson would pose a risk of harm to children in his wife's child-care program and, accordingly, that a disqualification, with a variance that is based on specified conditions, is appropriate.

**D E C I S I O N**

Section 245C.15 is not unconstitutional as applied to Gustafson on the grounds that the statute violates his constitutional rights to equal protection or due process. The commissioner did not err by denying Gustafson's request for reconsideration of his disqualification.

**Affirmed.**