*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0682**

In the Matter of Unity Health Care,
Class F Home License No. 352187
and Unity Home Care, Inc.,
Class A Professional Home Care License No. 353694.

**Filed February 27, 2017
Affirmed; motion granted
Reilly, Judge**

Minnesota Department of Health
File No. OAH #10-0900-30263

Lateesa T. Ward, Ward & Ward, P.C., Minneapolis, Minnesota (for relator Unity Health Care)

Lori Swanson, Attorney General, Audrey Kaiser Manka, Cody Zustiak, James P. Barone, Assistant Attorneys General, St. Paul, Minnesota (for respondent Commissioner of Minnesota Department of Health)

Considered and decided by Reilly, Presiding Judge; Connolly, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

Relator Unity Health Care challenges a final order by the commissioner of health (the commissioner) revoking its Class F home care license, refusing to renew its Class A home care license, and affirming fines imposed by respondent department of health (the

department). Relator argues that: (1) Minn. Stat. § 144A.46, subd. 3(a) (2014),[1] is unconstitutionally vague and overbroad, and results in an unconstitutional taking; (2) the commissioner's order was made on unlawful procedure and contains errors of law; (3) the revocation is not supported by substantial evidence and is arbitrary and capricious; (4) the revocation is moot; (5) the refusal to remove a commissioner's representative as decision-maker was an abuse of discretion; and (6) the revocation is against public policy. For the reasons discussed below, we grant the commissioner's motion to strike portions of relator's brief and affirm the commissioner's order.

**FACTS**

Pursuant to Minn. Stat. § 144A.45, subd. 2 (2014), the department may monitor and inspect home health care providers to ensure providers are complying with applicable laws and regulations. As part of this process, the department may conduct impromptu on-site inspections of facilities, observations of staff and care providers, surveys of providers, interviews, and document review. Written correction orders are issued for violations of applicable statutes and rules, and the department specifies a time period in which the home care provider must correct the violation. Each written correction order includes one or more "tag numbers,"[2] cites the rule or law violated, and provides the factual basis for the

---

[1] The parties stipulated below that the 2014 health-care-licensing statutes govern this case, as certain provisions of the home-care-licensing statutes have since been repealed. *See Interstate Power Co. v. Nobles County Bd. of Comm'rs,* 617 N.W.2d 566, 575 (Minn. 2000) (noting that, generally, "appellate courts apply the law as it exists at the time they rule on a case"). For this reason, this appeal will cite to the 2014 version of the home-care-licensing statutes.

[2] A "tag number" refers to the statute or rule the department determines provides the basis for the correction order.

2

issuance of the correction order. After the specified period passes, the department may conduct a follow-up visit to determine whether the violation has been corrected. If a facility fails to correct the violations within the specified period, the department is not required to provide an extension and may impose fines or penalties as it determines necessary.

In 2007, the department issued relator a Class F license to operate a home care facility and a Class A professional home care agency license. From 2007 to 2012, relator owned and operated four houses registered as housing with services establishments. *See* Minn. Stat. ch. 144D (2014). The department began conducting surveys of relator's houses in May 2011 and surveyed relator on multiple occasions in 2011, 2012, and 2013. Each survey resulted in the issuance of written correction orders. Following a survey conducted in May 2011, the department issued an immediate correction order for failure to comply with Minn. Stat. § 144A.44, subd. 1(2) (2010), which requires that all clients receive care that complies with accepted medical and nursing standards. In October 2011, the department imposed a conditional license, which restricted relator's authority to operate as a Class F and Class A home care provider and required that relator: (1) provide a list of all current clients to the department and refuse to admit new clients; (2) hire an independent consultant "to review, evaluate, and make recommended changes to the provider's practice [to] ensure that the licensee is in compliance with state laws and regulations governing home care practices, and submit weekly reports directly" to the department; (3) develop a written plan outlining the steps relator will take to ensure full compliance; and (4) notify clients, clients' care providers, and staff of the department's action against relator's license.

In an effort to comply with the conditional terms, relator hired Pathway Health Services, Inc. and Home Care Consultants. Pathway submitted weekly reports to the department, notifying the department of relator's continued improvements. In a February 2012 letter to the department, Pathway noted that it "can communicate with great confidence" that relator has "demonstrated full licensure requirements as outlined in [the department's] Plan of correction." Relying on this letter, relator requested that the department lift the conditional license. In a letter dated February 2012, the department denied relator's request, noting that it will not remove the conditional terms imposed until it may "make its own determination as to Unity's compliance status."

Despite relator's efforts to comply with the conditional-license terms, the department found numerous ongoing violations during the November and December 2011 surveys, the January and March 2012 surveys, and the June 2013 survey. In June 2012, the department notified relator of its intent to revoke relator's Class F license under Minn. Stat. § 144A.46, subd. 3(a), and deny renewal of relator's Class A license under Minn. R. 4668.0012, subpart 15, items A and C.

Relator requested a contested-case hearing before an administrative-law judge (ALJ) to challenge the department's decision. The contested-case hearing lasted over 30 days, beginning in September 2014 and ending in April 2015. Following the hearing, the ALJ issued findings of fact, conclusions of law, and a recommendation that the commissioner affirm the department's decisions to revoke relator's Class F license and deny renewal of its Class A license. The ALJ based his recommendation on the "imminent danger" and "serious health and safety risk" to relator's clients.

4

Relator then requested reconsideration of the ALJ's decision, and the commissioner upheld the department's revocation and nonrenewal of relator's licenses. This decision constituted the commissioner's final order. *See* Minn. Stat. § 14.61 (2014). Relator appealed and filed motions to stay enforcement of the commissioner's final order, and seeking reconsideration of the final order and reopening of the evidentiary record. The commissioner denied relator's motions.[3]

## DECISION

The Minnesota Administrative Procedure Act governs the scope of this court's review and provides that a "person aggrieved by a final decision in a contested case is entitled to judicial review of the decision." Minn. Stat. § 14.63 (2014). An appellate court reviewing an agency decision may affirm, reverse, remand, or modify "the decision if the substantial rights of the petitioners may have been prejudiced" because the administrative

---

[3] The exhibits offered by relator but not accepted by the ALJ are not part of the record and thus cannot be relied upon by relator in this appeal. In contested-case proceedings under the Minnesota Administrative Procedure Act, agencies "may admit and give probative effect to evidence which possesses probative value commonly accepted by reasonable prudent persons in the conduct of their affairs"; "shall give effect to the rules of privilege recognized by law"; and "may exclude incompetent, irrelevant, immaterial, and repetitious evidence." Minn. Stat. § 14.60, subd. 1 (2014). And all evidence "offered into evidence by a party to a contested case proceeding, shall be made a part of the hearing record of the case." *Id.*, subd. 2. When read in context with subdivision one, which allows an agency to exclude evidence, subdivision two is properly understood to include in the record documents available to an agency, offered into evidence by a party, and not excluded by the ALJ or agency. *See Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000) ("We are to read and construe a statute as a whole and must interpret each section in light of the surrounding sections to avoid conflicting interpretations."). Accordingly, because the exhibits excluded by the ALJ are not part of the record under the Minnesota Administrative Procedure Act, we grant the department's motion to strike references to them in relator's briefs.

decision (a) violated a constitutional provision, (b) exceeded the agency's jurisdiction or statutory authority, (c) was based on unlawful procedure, (d) was affected by an error of law, (e) was unsupported by substantial evidence in view of the entire record as submitted, or (f) was arbitrary or capricious. Minn. Stat. § 14.69 (2014).

When reviewing agency decisions, this court recognizes that "decisions of administrative agencies enjoy a presumption of correctness." *In re Minn. Power*, 838 N.W.2d 747, 757 (Minn. 2013) (quotation omitted). And we defer to agencies' expertise and "special knowledge in the field of their technical training, education, and experience." *Id.* (quotation omitted). "While we review legal questions de novo, we review factual determinations made within the scope of the agency's statutory authority under the substantial evidence standard." *Id.*

## I. The revocation of relator's home care license is constitutional.

When "evaluating challenges to the constitutionality of statutes, this court recognizes that the interpretation of statutes is a question of law." *State v. Machholz*, 574 N.W.2d 415, 419 (Minn. 1998) (quotation and citation omitted). Appellate courts presume Minnesota statutes are constitutional and therefore exercise the power to declare a statute unconstitutional only "with extreme caution and only when absolutely necessary." *Id.* (quotation and citation omitted). This court reviews constitutional challenges de novo, *State v. Melchert-Dinkel*, 844 N.W.2d 13, 18 (Minn. 2014), and the party challenging the statute bears the "burden of demonstrating beyond a reasonable doubt that the statute is unconstitutional." *Machholz*, 574 N.W.2d at 419 (quotation omitted).

Relator challenges the constitutionality of the commissioner's revocation action, arguing that Minnesota's home-care-licensure statute is vague and overbroad, and results in an unconstitutional taking.

Minnesota statutes section 144A.46, subdivision 3(a), provides:

> The commissioner may refuse to grant or renew a license, may suspend or revoke a license, or may impose a conditional license for violation of statutes or rules relating to home care services or for conduct detrimental to the welfare of the consumer. . . . Terms for a suspension or conditional license may include one or more of the following and the scope of each will be determined by the commissioner:
>
> > (1) requiring a consultant to review, evaluate, and make recommended changes to the provider's practices and submit reports to the commissioner at the cost of the provider;
> > (2) requiring supervision of the provider's practices at the cost of the provider by an unrelated person who has sufficient knowledge and qualifications to oversee the practices and who will submit reports to the commissioner;
> > (3) requiring the provider or the provider's employees to obtain training at the cost of the provider;
> > (4) requiring the provider to submit reports to the commissioner;
> > (5) prohibiting the provider from taking any new clients for a period of time; or
> > (6) any other action reasonably required to accomplish the purpose of section 144A.45, subdivision 2, and this subdivision.

*Id.*

### A. *Minn. Stat. § 144A.46, subd. 3(a), is not unconstitutionally vague.*

Because Minnesota's home-care-licensure statute does not define "conduct detrimental to the welfare of the [client,]" and because the statute similarly fails to define

7

whose conduct is at issue, relator argues the statute is unconstitutionally vague, that no reasonable person could anticipate the behavior "sufficiently severe enough" to trigger penalties under the statute.

The Due Process Clause of the Fourteenth Amendment prohibits vague statutes. *In re On-Sale Liquor License, Class B.*, 763 N.W.2d 359, 366 (Minn. App. 2009). Vague statutes may violate due process in at least two ways: (1) they may "trap the innocent by not providing adequate warning of unlawful conduct," and (2) they may "unleash the potential for unfair and uneven law enforcement by not establishing minimal guidelines." *In re Welfare of B.A.H.*, 845 N.W.2d 158, 163 (Minn. 2014) (quotation omitted). Accordingly, "a party may bring a void-for-vagueness challenge if the statute at issue encompasses constitutionally protected conduct or if there is a potential for arbitrary and discriminatory enforcement." *In re Minn. Dep't of Nat. Res. Special Permit No. 16868*, 867 N.W.2d 522, 532-33 (Minn. App. 2015), *review denied* (Minn. Oct. 20, 2015).

In essence, a statute is void for vagueness if the statute is so indefinite that people "must guess at its meaning," *Humenansky v. Minn. Bd. of Med. Exam'rs*, 525 N.W.2d 559, 564 (Minn. App. 1994), *review denied* (Minn. Feb. 14, 1995), leaving enforcers "free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case," *State v. Bussmann*, 741 N.W.2d 79, 83 (Minn. 2007). But inclusion of general language alone does not render a statute unconstitutionally vague. *See Hard Times Café, Inc. v. City of Minneapolis*, 625 N.W.2d 165, 171-72 (Minn. App. 2001). This court will not declare a statute void for vagueness and uncertainty "where the meaning thereof may be implied, or where it employs words in common use, or words commonly

understood . . . or an unmistakable significance in the connection in which they are employed." *Invention Mktg., Inc. v. Spannaus*, 279 N.W.2d 74, 80 (Minn. 1979) (quotation omitted).

Relator argues that Minnesota's home-care-licensing statute is unconstitutionally vague because it allows the department to revoke relator's license for detrimental conduct by its staff, rather than its owner and managers. This argument is both absurd and disingenuous. A reasonable person would understand that, as a home care provider, relator's owner and managers are responsible for the actions of its staff. And this court previously affirmed the department's finding of maltreatment of a vulnerable adult by relator's owner, Beth Balenger. *See Balenger v. Dep't of Health*, No. A15-0226, 2015 WL 7357192, at *1 (Minn. App. Nov. 23, 2015) (holding that the owner of Unity maltreated a vulnerable adult when she hosed a client down with water from a garden hose), *review denied* (Minn. Feb. 16, 2016). Thus, the omission of language requiring home care providers' management to personally engage in detrimental and unlawful conduct does not render the statute unconstitutionally vague.

Moreover, the statute specifically prohibits conduct in "violation of statutes or rules relating to home care services" or "conduct detrimental to the welfare of the consumer." Minn. Stat. § 144A.46, subd. 3(a). *The American Heritage Dictionary* defines "detrimental" as "[c]ausing damage or harm; injurious." *The American Heritage Dictionary* 495 (5th ed. 2011). Relator does not contest the findings that relator failed to properly sanitize and care for a client's peripherally inserted central catheter line, "hosed off" a client confined to a wheelchair using a garden hose, failed to properly document

9

clients' medications and the services provided, repeatedly administered incorrect insulin dosages resulting in multiple hospitalizations, and provided grossly inadequate wound and perineal care. A reasonable person would understand that this conduct is detrimental to a client's welfare and violates the rules governing home care services. Minnesota's home-care-licensing statute is not void for vagueness.

### B. Minn. Stat. § 144A.46, subd. 3(a), is not unconstitutionally overbroad.

Relying on its void-for-vagueness argument, relator similarly argues the statute is overbroad. A statute is overbroad if it "prohibits constitutionally protected activity, in addition to activity that may be prohibited without offending constitutional rights." *Machholz*, 574 N.W.2d at 419. Before appellate courts may address a facial overbreadth challenge, they must determine whether the statute in question implicates a constitutional right. *Id.* If the statute does not implicate a constitutional right, "then we need go no further because no constitutional question is raised." *Id.* Relator fails to identify any constitutionally protected activity prohibited by the statute, and instead broadly asserts, without support, that the statute "provides opportunities for overzealous regulators to abuse their discretion." Because relator failed to satisfy its burden of demonstrating that the statute is unconstitutional, this argument is unavailing.

### C. Revocation of relator's license under Minn. Stat. § 144A.46 does not violate its right to substantive or procedural due process.

#### 1. The department's revocation action did not violate relator's Fourteenth Amendment right to substantive due process.

The doctrine of substantive due process is derived from the Due Process Clause of the Fourteenth Amendment, *see* U.S. Const. amend. XIV, § 1, which "protects individuals

10

from certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement [them]." *Gustafson v. Comm'r of Human Servs.*, 884 N.W.2d 674, 683 (Minn. App. 2016) (quotation omitted). Disqualification from a state-licensed program may violate an entity's right to substantive due process if the statute applied is unreasonable, results in arbitrary or capricious interference, or lacks, at a minimum, "a rational relation to the public purpose sought to be served." *Obara v. Minn. Dep't of Health*, 758 N.W.2d 873, 879 (Minn. App. 2008) (quotation omitted).

Review of a substantive-due-process challenge is a two-step process. First, this court must question whether the challenge involves a fundamental right. *Gustafson*, 884 N.W.2d at 683. If a fundamental right is at stake, "the state must show that its action serves a compelling government interest." *Northwest v. LaFleur*, 583 N.W.2d 589, 591 (Minn. App. 1998), *review denied* (Minn. Nov. 17, 1998). When the statute at issue does not affect a fundamental right, substantive due process requires only that the statute bear a rational relation to the legitimate public purpose sought. *State v. Bernard*, 859 N.W.2d 762, 773 (Minn. 2015) (quotation omitted), *aff'd sub nom. Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016). In essence, the state "must have a public interest in regulating an activity and . . . the regulation imposed must be reasonable and appropriate for accomplishing its purpose." *State v. Stewart*, 529 N.W.2d 493, 497 (Minn. App. 1995). "Generally, the protection of health, morals, safety, or welfare are legitimate purposes." *Thul v. State*, 657 N.W.2d 611, 617 (Minn. App. 2003).

The United States Supreme Court has never held that the right to pursue a specialized profession is a fundamental right. *See Conn v. Gabbert*, 526 U.S. 286, 291-92,

11

119 S. Ct. 1292, 1295-96 (1999) ("[T]he liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment . . . subject to reasonable government regulation."); *Nebbia v. N.Y.*, 291 U.S. 502, 527-28, 54 S. Ct. 505, 510-12 (1934) (holding that the right to pursue a particular profession or "calling" is a protected right conditioned upon, and subject to, reasonable government regulation). Rather, regulation of the right to pursue a particular profession is subject to rational-basis review. *See Comm'r of Human Servs. v. Buchmann*, 830 N.W.2d 895, 901 (Minn. App. 2013), *review denied* (Minn. July 16, 2013). Accordingly, this court must apply the rational-basis test to determine whether application of the home-care-licensing statute violates relator's substantive-due-process rights.

The legislature enacted the home-care-licensing statute to protect the safety of vulnerable adults and adults in need of care. *See* Minn. Stat. §§ 144A.44, subds. 1, 2. And the legislature established the Home Care Bill of Rights to ensure home care agencies provide appropriate individualized client plans, follow accepted nursing and medical standards, and treat clients with respect. *See id.* Protecting the welfare of vulnerable adults and persons in need of home care is a legitimate public purpose. *See Thul*, 657 N.W.2d at 617.

The home-care-licensing statute is also rationally related to protecting public safety. The provision at issue allows the commissioner to revoke, suspend, deny, or refuse to renew licenses of home care providers whose "services or . . . conduct [is] detrimental to the welfare of the consumer." Minn. Stat. § 144A.46, subd. 3(a). It is rational for the state to determine that the public is safer if the state revokes, suspends, denies, or refuses to

12

renew the licenses of providers whose services or conduct is harmful to clients. The home-care-licensing statute therefore does not violate relator's substantive-due-process rights.

2. *The department's revocation action also did not violate relator's Fourteenth Amendment procedural-due-process rights.*

Relator also argues that its procedural-due-process rights were violated. "The foundational principle of the right to due process is an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right for which the constitutional protection is invoked." *Gams v. Houghton*, 884 N.W.2d 611, 618 (Minn. 2016) (quotation omitted). Review of the record clearly shows that the department afforded relator sufficient procedural due process, including an over 30-day contested hearing, during which, the ALJ received and reviewed an almost 15,000-page record, before terminating relator's licenses.

3. *Revocation of relator's license under Minn. Stat. § 144A.46 does not result in an unconstitutional taking.*

Relator next argues that the commissioner's decision to revoke and refuse to renew its home care licenses violates the Takings Clause. Relator did not cite to the United States or Minnesota Constitutions, but we assume that relator intended to argue the taking was unconstitutional under both.

The Fifth Amendment to the United States Constitution prohibits the government from taking private property for public use without just compensation. U.S. Const. amend. V; *see also* Minn. Const. art. 1, § 13 (providing that "[p]rivate property shall not be taken, destroyed or damaged for public use without just compensation"). But the law distinguishes between a "property interest" and "private property which is subject to the constitutional provision of taking," *Hay v. City of Andover*, 436 N.W.2d 800, 804 (Minn.

13

App. 1989); and it is well established that a license is a privilege and is not private property, unless it is assignable and transferrable. *See State by Mattson v. Saugen*, 283 Minn. 402, 406, 169 N.W.2d 37, 40-41 (1969). Relator's license is not transferrable. *See* Minn. R. 4668.0012, subp. 16 (2012); *see also* Minn. Stat. § 144A.472, subd. 5 (2014). Accordingly, relator's license is not private property and revocation of relator's license is not reviewable as a taking under the United States or Minnesota Constitutions. [4]

## II. The commissioner's decision was not based on unlawful procedure and contains no errors of law.

Relator argues that the commissioner's decision was affected by an error of law and based on unlawful procedure because the commissioner (1) abused its discretion by imposing inappropriate sanctions, (2) erroneously admitted hearsay during the contested-case hearing, (3) failed to consider mitigating circumstances, and (4) issued tags that were unsupported by facts or legal authority. We address each argument in turn.

---

[4] Relator further argues that the license-revocation action violates the Equal Protection Clause of the Fourteenth Amendment. Relator failed to assert an equal-protection argument in its principal brief and this issue is beyond the scope of the department's responsive brief. The Minnesota Rules of Civil Procedure authorize a relator to file a reply brief, but "[t]he reply brief must be confined to new matter raised in the brief of the respondent." Minn. R. Civ. App. P. 128.02, subd. 3. "If an argument is raised in a reply brief but not raised in an appellant's main brief, and it exceeds the scope of the respondent's brief, it is not properly before this court and may be stricken from the reply brief." *Wood v. Diamonds Sports Bar & Grill, Inc.*, 654 N.W.2d 704, 707 (Minn. App. 2002), *review denied* (Minn. Feb. 26, 2003); *see also Moorhead Econ. Dev. Auth. v. Anda*, 789 N.W.2d 860, 887 (Minn. 2010) (noting that "raising issues for appeal in one's reply brief is not proper practice and is not to be permitted") (quotation omitted). Relator forfeited its constitutional equal-protection argument by failing to argue that constitutional violation in its principal brief. Accordingly, this court grants the department's motion to strike this argument.

**A.** *The commissioner did not abuse its discretion by imposing sanctions*.

The statutes regulating licensing of home care providers authorize the department to issue fines, *see* Minn. Stat. § 144A.45 (2014), or to revoke, suspend, or place conditional terms on the license for noncompliance or "conduct detrimental to the welfare of the consumer," Minn. Stat. § 144A.46, subd. 3(a). It is within the discretion of the department to decide whether to issue fines, to impose a conditional license, or to suspend or revoke a provider's license. *See id.* ("The commissioner may refuse to grant or renew a license, may suspend or revoke a license, or may impose a conditional license for violation of statutes or rules relating to home care services or for conduct detrimental to the welfare of the consumer.").

But relator argues that the department should have issued incremental fines, before revoking and refusing to renew its licenses because: (1) Minn. Stat. § 14.02 (2014) requires that the commissioner regulate home care providers in a manner that affords "maximum flexibility [to] the regulated party and the agency in meeting [its] goals" and (2) an informational guide published by the department suggests that the department must issue incremental fines before initiating a revocation action. This argument misrepresents the applicable standard for license revocation—"conduct detrimental to the welfare of the consumer" or in violation of home care laws. This argument also implies that an informational guide supersedes statutory law and administrative rules, and it ignores the guide's disclaimer, which explains that it is "not a replacement to the licensure rules or statutes." While the department has the authority to impose fines before initiating a license-revocation action, the department avoided doing so in this case because it determined that

15

the imposition of fines would impose a substantial burden on relator, who was already expending significant funds in an effort to come into compliance. The commissioner did not abuse its discretion by imposing a conditional license, rather than monetary fines.

## B. *Hearsay is admissible in contested-case hearings.*

Relator also incorrectly argues that the commissioner erroneously relied on speculation and hearsay evidence. This argument is unsupported by legal authority.

In Minnesota, agencies may admit evidence in contested cases "which possesses probative value commonly accepted by reasonable prudent persons in the conduct of their affairs." Minn. Stat. § 14.60, subd. 1 (2014). And an ALJ may "admit all evidence which possesses probative value, including hearsay, if it is the type of evidence on which reasonable, prudent persons are accustomed to rely in the conduct of their serious affairs." Minn. R. 1400.7300, subp. 1 (2014). While the Minnesota Supreme Court previously expressed concern regarding the use of hearsay evidence at administrative hearings, the supreme court clarified that it is "not prepared to say that hearsay evidence standing alone may never support a disciplinary action against a licensed professional." *In re Wang*, 441 N.W.2d 488, 495 (Minn. 1989). Thus, the ALJ did not err by considering hearsay evidence at the contested-case hearing.

## C. *The commissioner is not required to consider mitigating factors in making its determination.*

Relator further asserts that the commissioner erred by failing to consider mitigating factors and its "substantial compliance" before making its determination. As support for this contention, relator cites the administrative agency's decision *In re Steiger*, No. 5-0909-

10014-2, O.A.H., in which an ALJ held that a "licensee's defenses to its actions and any mitigating factors are important considerations in a licensing action." When considering "questions of law, [appellate] courts are not bound by the decision of the administrative agency and need not defer to agency expertise." *State Farm Mut. Auto. Ins. Co. v. Metro. Council*, 854 N.W.2d 249, 262 (Minn. App. 2014) (quotation omitted), *review denied* (Minn. Dec. 16, 2014). And the commissioner is not required to consider mitigating factors and substantial compliance with written correction orders when applying the home-care-licensing statute. *See* Minn. Stat. § 144A.46, subd. 3(a). Accordingly, this argument is unavailing.

### D. Tags 0030 and 0690 were properly issued.

Relator next argues that, because tags 0030 and 0690 were based on "deliberate misapplication of rules and statutes," the commissioner's final decision is based on unlawful procedure and contains errors of law. Tags 0030 and 0690 were issued for failing to provide adequate wound care, noncompliance with a client's individualized-care plan, and inadequate documentation of the services provided to a client; the evidence supports these tags. The lack of charting, failure to comply with the client's individualized-care plan, and grossly inadequate wound care violated home care laws, warranting the issuance of tags 0030 and 0690. *See* Minn. Stat. § 144A.44, subd. 1(2); *see also* Minn. R. 4668.0810, subp. 6 (2012).

17

**III.** **The commissioner's final order revoking relator's Class F license and denying renewal of its Class A license is supported by substantial evidence and is not arbitrary and capricious.**

*A. Substantial evidence supports the commissioner's order revoking relator's Class F license and denying renewal of its Class A license.*

Administrative-agency decisions "enjoy a presumption of correctness," and deference should be shown by courts to an agency's expertise and its special knowledge in its field of technical training, education and experience. *In re Minn. Power*, 838 N.W.2d at 757 (quotation omitted). Appellate courts review "factual determinations made within the scope of the agency's statutory authority under the substantial evidence standard." *Id.* To uphold the commissioner's factual determinations under the substantial-evidence standard, this court must "determine whether the agency has adequately explained how it derived its conclusion and whether that conclusion is reasonable on the basis of the record." *Id.* (quotation omitted).

On appeal, relator expressly challenges October 2011 tag 0030, March 2012 tag 0030, and June 2013 tags 0030 and 0690. After reviewing the record, we conclude that substantial evidence exists to support the commissioner's finding that the department properly issued each challenged tag. Even if these tags were unsupported by substantial evidence, the remaining unchallenged tags are supported by substantial evidence and demonstrate the seriousness of the health and safety risks to relator's clients. The commissioner's final order is supported by substantial evidence.

## B. The commissioner's final order is not arbitrary or capricious.

"An agency's decision is arbitrary or capricious if it represents the agency's will and not its judgment." *In re Review of 2005 Annual Automatic Adjustment of Charges for all Elec. & Gas Utils.*, 768 N.W.2d 112, 118 (Minn. 2009). In essence, the decision is arbitrary and capricious if the agency:

> (a) relied on factors not intended by the legislature; (b) entirely failed to consider an important aspect of the problem; (c) offered an explanation that runs counter to the evidence; or (d) the decision is so implausible that it could not be explained as a difference in view of the result of the agency's expertise.

*Id.* (quoting *Citizens Advocating Responsible Dev. v. Kandiyohi County Bd.*, 713 N.W.2d 817, 832 (Minn. 2006)).

There is no evidence that the commissioner's final decision was arbitrary or capricious. The ALJ issued a well-reasoned 28-page recommendation, and the commissioner carefully considered relator's request for reconsideration. Contrary to relator's claim that the commissioner simply "rubber-stamped" the ALJ's recommendation, the record shows that the commissioner thoroughly reviewed the ALJ's recommendations and issued an equally well-reasoned 17-page decision. Ultimately, the commissioner's final decision was based on appropriate law and facts; it was not the product of the commissioner's will or judgment.

## IV. The department's revocation action is not moot.

Relator next argues that the department's revocation action is moot because relator "resolved" the violations noted in the correction orders, and has not received a correction order after June 2013. Relator misapprehends the doctrine of mootness, which requires

19

that courts only decide actual controversies. "The mootness doctrine is not a mechanical rule that is automatically invoked whenever the underlying dispute between the parties is settled or otherwise resolved." *Dean v. City of Winona*, 868 N.W.2d 1, 4 (Minn. 2015). "[A]n appeal is not moot, however, where the issue raised is capable of repetition yet evades review or where collateral consequences attach to the judgment." *In re McCaskill*, 603 N.W.2d 326, 327 (Minn. 1999) (quotation omitted). Thus, we will dismiss an appeal as moot only "when a decision on the merits is no longer necessary or an award of effective relief is no longer possible." *Dean*, 868 N.W.2d at 4. There is an actual controversy here, and a decision on the merits is necessary to conclude this lengthy litigation. Collateral consequences also attached to the commissioner's final decision—relator's owners and managers are ineligible for a Class F and a Class A license for five years from the date of revocation. *See* Minn. Stat. § 144A.46, subd. 3(d). Accordingly, the matter is not moot.

## V. The representative for the commissioner did not abuse her discretion by refusing to remove herself as decision-maker.

Relator contends that the commissioner's representative abused her discretion by refusing to remove herself as decision-maker in this matter because the representative was the decision-maker in a prior case involving relator's owner. *See Balenger*, 2015 WL 7357192, at *1 (holding that the owner of Unity maltreated a vulnerable adult when she hosed a client down with water from a garden hose). In *Balenger*, the commissioner's representative rejected the human-services judge's recommendation that the department's finding should be reversed, and instead affirmed the department's finding of maltreatment.

20

*Id.* at *1. Relying on the commissioner's representative's decision in the maltreatment matter, relator asserts that the decision-maker is biased.

Relator's constitutional due-process rights include the right to an impartial decision-maker, but a decision-maker's prior involvement "in some aspects of the case will not necessarily bar an official from acting as a decision-maker." *Chanhassen Chiropractic Ctr., P.A. v. City of Chanhassen*, 663 N.W.2d 559, 562 (Minn. App. 2003) (quotation omitted), *review denied* (Minn. Aug. 5, 2003). Rather, "whether a hearing officer is impartial is a fact-specific inquiry that depends on the context in which the appeal is heard." *Id.* at 562-63. But we recognize that "[t]here is a presumption of administrative regularity, and the party claiming otherwise has the burden of proving a decision was reached improperly." *In re Khan*, 804 N.W.2d 132, 137 (Minn. App. 2011) (quotation omitted).

Relator cites no relevant legal authority or facts in support of its argument that the decision-maker was biased. Indeed, relator cites only one case in support of its argument, *Withrow v. Larkin*, 421 U.S. 35, 54-55, 95 S. Ct. 1456, 1468 (1975), and *Larkin* contradicts relator's argument. In *Larkin*, the United States Supreme Court held that an administrative board did not violate an agency's procedural due-process rights by adjudicating an issue that it had previously investigated. *Id.* Moreover, relator failed to offer any factual record from which this court may draw a reasonable inference of the decision-maker's bias in the present matter; instead, relator invites this court to speculate that bias exists. We decline to do so.

**VI.    The revocation of relator's license is not contrary to public policy.**

Finally, relator argues that the revocation action is against public policy because it will: (1) encourage arbitrary enforcement of the statute, (2) diminish "incentives for licensees to invest time and resources into improving operations," and (3) decrease state revenue.  These arguments are best left to the legislature or the supreme court.  *See Morris v. State*, 765 N.W.2d 78, 85 (Minn. 2009) ("The development of . . . public policy [is] better left to the legislature.").  "It is not for the [lower] courts to make, amend, or change the statutory law, but only to apply it."  *State v. Haywood*, 886 N.W.2d 485, 491 (Minn. 2016) (quotation omitted).  Accordingly, this argument is not properly before the court.

**Affirmed; motion granted.**